THE TRANSFER NO. 20.

THE OLYMPIA.

(Circuit Court of Appeals, Second Circuit.    June 14, 1913.)

Nos. 214, 215.

COLLISION (§ 95*)—MEETING TOWS—FAULT OF TUG.

The tug Olympia with two scows in tow tandem was passing down East river near the Astoria shore on an ebb tide when both the scows came into collision with a car float on the port side of transfer tug No. 20 which was bound up with a tow on each side. The tows approached each other on either side of Hallett's point and exchanged signals for passing port and port. *Held*, on conflicting evidence, that the collision took place below the point, where the transfer had properly stopped to allow the other tow to pass, and was due solely to the fault of the Olympia in keeping too close to the shore.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Mary A. Quigley, executrix, etc., against the steam tug Transfer No. 20, the New York, New Haven & Hartford Railroad Company, claimant, and steam tug Olympia, the Goodwin Sand & Gravel Company, claimant; Cleary Bros. against the same. Decrees against the Olympia, and her claimant appeals.    Affirmed.

The following is the opinion of the District Court by Hough, District Judge:

Libelants are owners of two scows which constituted the tandem tow of the Olympia on January 11, 1912, when, with the tide ebb, the weather clear, the wind negligible, and in broad daylight, successive collisions occurred between the scows and the tow of the Transfer No. 20 near Hallett's Point Light.  The Transfer 20 was in charge of two car floats, one on each side.

The Olympia was bound down the East river, and the No. 20 was bound the other way.  It is either admitted or clearly proven that each vessel blew the usual one whistle and each saw the other across Hallett's point and thereupon exchanged and understood a one whistle signal.  It is also admitted that under these circumstances it was the duty of the Transfer to remain below Hallett's point until the Olympia and her tow had gotten clear, and the duty of the Olympia to go clear of the point by a proper margin of safety.  Nevertheless a collision occurred, which cannot be accounted for except by negligence on the part of one or both masters distinctly more glaring than is usual in litigation of this class.

The question of fact presented by the evidence may be stated thus: If the collision happened below Hallett's point (that is, nearer Manhattan), then the Olympia must have been at fault; if it happened above the point, then the Transfer did not live up to the agreement that she made by the exchange of two whistles, and she is at fault.  Those in charge of the Transfer and her tow all agree that after the exchange of one whistle the Transfer immediately stopped her engines and remained behind the point at a distance of not over a hundred feet from the Astoria shore, but that the Olympia, cutting too close to Hallett's point, went clear herself but dragged first one and then the other of her tows against the car float.

Those, in charge of the Olympia agree that with a flotilla, which was a little more than 420 feet long (from the bow of the tug to the stern of the after scow), they shaped their course in the true tide and passed Hallett's Point Light 400 feet off with the tow directly astern, but that nevertheless the Transfer, advancing nearly 400 feet beyond the place where she should have been, caught the tow before it could get by.

The evidence from the Olympia also asserts that, if that tug had tried to do what the Transfer says was done, the tide-set at Hallett's point is so strong that she could not have gotten close enough to effect the necessary contact. All the witnesses in this case were examined in open court; no attack upon the credibility of any of them has been made; and the court must turn, to decide as to the weight of evidence, from the interested witnesses to those who had no connection with the navigation of either tug or tow. Captain McKinnon was in charge of a dredge working in the neighborhood. He confirms in substance the original course of the Olympia, but after she had gotten clear of his dredge he watched her no further, and it is perfectly possible that the Olympia might have done that which produced collision after Captain McKinnon ceased to see her.

The master of the Anna W. was on the 102d street pier, and he does assert that he saw the two tows in very close proximity, 200 feet "off the Light."

The master and mate of the Intrepid passed the Olympia (bound east) above Hallett's point, and by looking backwards they observed the tows very close together (but thought that they had barely gone clear) about 75 feet above Hallett's Point Light.

It is to be observed that the last three witnesses enumerated do not confirm the story of the Olympia as to the distance by which she cleared the Light. On the other hand, the keeper of the lighthouse and another observer declare that they were on shore and watching at the moment of collision, and both agree that the collision occurred 150 feet below the Light and when the starboard side of the Transfer's tow was not more than a hundred feet from the shore. This is positive and unimpeached testimony from wholly disinterested witnesses and confirmatory in every detail of the statements as to navigation made by those in charge of the Transfer.

This case must be decided by the weight of evidence. In my judgment that weight is on the side of the Transfer, and it results that each of the libels first above named will be sustained against the Olympia and dismissed as against the Transfer.

Foley & Martin, of New York City, for appellant.

J. T. Kilbreth, of New York City, for Transfer No. 20.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. Decrees affirmed, with interest and costs of this appeal to No. 20 against the Olympia.